IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROSA SANDOVAL, )
)
    Plaintiff, )
)
v. ) Civil Action No. 1:17-cv-01053 (AJT/TCB)
)
STARWEST SERVICES, LLC, *et al.*, )
)
    Defendants. )
)
_____ )

## **MEMORANDUM OF DECISION AND ORDER**

Plaintiff has sued Defendants Starwest Services, LLC ("Starwest"), Ehab Khalil, and Tariq Algaily for violation of the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.* ("FLSA") (Counts I and V), breach of contract (Count II), quantum meruit (Count III), and unjust enrichment (Count IV). Plaintiff seeks damages for unpaid wages and overtime pay, compensatory damages, liquidated damages, fees, interest, and costs pursuant to the FLSA. On March 19, 2018, the Court denied the parties' Motions for Summary Judgment and on March 26, 2018, held a bench trial with respect to the following issues: (1) whether Plaintiff is an "employee" or independent contractor under the FLSA; and (2) if an "employee," whether Defendants' classifying Plaintiff as an independent contractor was in good faith and with reasonable grounds for believing such a classification was not a violation of the FLSA.[2] Based on the evidence presented, the Court finds and concludes that (1) Plaintiff was an "employee" for the purposes of the FSLA; (2) each of the Defendants is an "employer" under the FLSA; (3)

---

[2] At the conclusion of the trial, the Court took the matter under advisement and the parties have submitted their post-trial Proposed Findings of Fact and Conclusions of Law, as the Court directed. [Doc. No. 178] ("Defs.' Proposed Findings of Fact and Conclusions of Law"), [Doc. No. 179] ("Pl.'s Findings of Fact and Conclusions of Law").

1

Defendants failed to pay the Plaintiff regular wages in the amount of $6,400 and overtime wages in the amount of $6,354, for a total of unpaid wages in the amount of in the amount of $12,754; and (4) Plaintiff is entitled to liquidated damages in the amount of $12,754. Accordingly, the Court issues its verdict in favor of the Plaintiff in the amount of $25,508. In support of this verdict, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rules of Civil Procedure 52(a).[3]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Findings of Fact

Based on all the evidence presented at trial, including the Court's assessment of the credibility of witnesses and the weight to be given each piece of evidence, the Court finds as follows:[4]

1. Beginning in 2015, Plaintiff provided housekeeping services at a residence located in Great Falls, Virginia (the "House").

2. During the time that Plaintiff provided housekeeping services at the House, the House was owned by Princess Michelle and Prince Saud and was occupied from time to time by Prince Bader ("the Prince"). The House was under the general supervision of the Prince's agents, Mr. Joseph and Dr. Nouri.

3. Defendant Starwest is a concierge services company that was formed on or around June 2015. The company provided, among other services, cleaning and/or housekeeping services.

4. Defendants Ehab Khalil and Tariq Algaily are principals of Starwest.

---

[3] Federal Rule of Civil Procedure 52(a) provides: "In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."

[4] The Court's findings of fact include those facts included within its Conclusions of Law.

5.  From 2008 to 2015, the Plaintiff provided her services to the House through a company called Springvale and later on, a company called Nash. Under her arrangements with those companies, she worked on an hourly basis and was treated as an employee, with tax and other withholdings from her pay.

6.  In 2015, the owners of the home stopped using the services of Springvale and Nash and at the Prince's suggestion, Defendants Khalil and Algaily, who were the drivers of the Prince's friends, formed Starwest. In 2017, Starwest had two clients other than the Prince.

7.  In early 2015 (formally executed on March 4, 2016), Starwest and the Prince entered into a contract, under which Starwest was to provide the Prince house management services which included house maintenance such as landscaping and cleaning, as well as chauffeur services.

8.  Beginning in 2015, the Plaintiff entered into an arrangement with Starwest and continued to provide housekeeping services for the House through her arrangement with Starwest. Under that arrangement, Defendants designated the Plaintiff an "independent contractor" and paid the Plaintiff $20 per hour, with no withholdings.

9.  In addition to providing the Plaintiff's services, Starwest continued providing the services of Defendant Khalil as the Prince's limousine driver.

10. Starwest has no individuals it considers to be employees and has designated Defendant Khalil as an independent contractor.

11. Starwest had the right to hire and fire the Plaintiff; and direct the details of her work.

12. The Prince, acting through Mr. Joseph, had the authority and the ability to supervise the Plaintiff and direct the details of her work, including setting Plaintiff's schedule. Although the Plaintiff was permitted to set her own work schedule when the Prince was not occupying the

3

House, she worked on an hourly basis and was not permitted to set her own schedule when the Prince and the family were living in the home.

13. Although the Defendants did not directly supervise or instruct the Plaintiff on how to perform her duties, they, together with the Prince, acting through his agent Mr. Joseph, had the ability and authority jointly to exert a significant degree of control over Plaintiff and had they wished to exercise that authority, had the practical ability to direct the Plaintiff as what to clean within the House and when.

14. When the Prince was occupying the House, Starwest paid Plaintiff $20 per hour, regardless of how many hours she worked in excess of forty hours per week. When the House was not occupied by the Prince, the Plaintiff, in an arrangement reached with the Prince, through Mr. Joseph and Dr. Nouri, was paid $400 per week, regardless of the number of hours she spent at the house, and she typically worked one to two days per week for one to two hours, during the period when the House was not occupied by the Prince.

15. Plaintiff was paid directly by Starwest and submitted time sheets in order to be paid for her services. Starwest presented these time sheets to the Prince, who would reimburse Starwest on a "pass-through" basis, that is, the Prince paid Starwest $20 per hour for Plaintiff's services, without any additional fees or payments to Starwest. Similarly, the Prince paid Starwest $5,000 per month for the service of Defendant Khalil as the Prince's driver.

16. The Prince and Starwest had an integrated business, were not completely disassociated with respect to the employment of the Plaintiff, and the employment arrangement between the Defendants and the Prince was essentially a single employment arrangement.

17. The Plaintiff was economically dependent on her employment arrangement with the Prince and the Defendants, who collectively had the ability to control the manner in which the work is performed.

18. The Plaintiff had little, if any, opportunity for profit or loss dependent on her managerial skill.

19. The Plaintiff did not significantly invest in equipment or material, or employ others, in order to perform her job duties. Mr. Joseph, the Prince's agent, provided Plaintiff with cleaning supplies while the house was being occupied; and although Plaintiff deducted expenditures for materials on her tax returns, her deductions for materials alone were not a substantial investment. In short, the Plaintiff did not make any large expenditures, such as risk capital, or capital investments, and substantially limited herself to negible items and her labor.

20. The Plaintiff's job duties required a relatively low degree of skill required for the work.

21. Plaintiff worked for the Defendants from some point in 2015 to March 2017 and her work for the Prince and the Defendants had a substantial degree of permanence.

22. Although house cleaning only accounts for a small percentage of Starwest's offered services, cleaning services constituted a significant service Starwest provided to its most important client, and therefore represented an integral portion of Starwest's total business.

23. Defendants did not act in good faith and with reasonable grounds for believing that it was not violating the FLSA. Defendants failed to take any steps to investigate their responsibilities as an employer or their potential liability under the FLSA and at least recklessly disregarded whether their conduct was prohibited under the FLSA.

24. For the months of February 2017 and March 2017, Defendants failed to pay Plaintiff any wages, which included 320 hours of regular wages in the amount of $6,400; and 123 hours of

overtime wages in the amount of $3,690, for a total of unpaid wages during this period of $10,090, summarized in the following chart:

| Pay Period | Total Hours Worked per Pay Period | Total Regular Hours Worked Per Pay Period | Total Overtime Hours Worked Per Pay Period | Total Amount of Unpaid Wages |
|---|---|---|---|---|
| 2/1/17 to 2/15/17 | 120 | 80 | 40 | $1,600 (80 hours); $1,200 (40 overtime hours) |
| 2/16/17 to 2/28/17 | 108 | 80 | 28 | $1,600 (80 hours); $840 (28 overtime hours) |
| 3/1/17 to 3/15/17 | 125 | 80 | 45 | $1,600 (80 hours); $1,350 (45 overtime hours) |
| 3/16/17 to 3/31/17 | 90 | 80 | 10 | $1,600 (80 hours); $300 (10 overtime hours) |
| **Totals:** | 443 hours | 320 hours | 123 hours | $6,400 (320 hours) + $3,690 (123 overtime hours) = **$10,090** |

25. During the period January 1, 2016 to May 15, 2016, the Plaintiff was never paid overtime (at $30 per hour) for time worked in excess of forty hours in a work week and worked the following number of overtime hours in excess of forty hours per week (80 hours per pay period) during the period January 1, 2016 to May 15, 2016:

| Pay Period | Total Hours Worked[5] | Overtime Hours Worked[6] | Total Payments Made[7] | Total Amount Due[8] | Total Unpaid Overtime[9] |
|---|---|---|---|---|---|
| 1/1/16 to 1/15/2016 | 91 | 11 | $1,820 | $1,930 | $110 |

---

[5] *See* Defs.' Ex. 3; Pl.'s Ex. 1.
[6] The "Overtime Hours Worked" represents the numbers of hours Plaintiff worked in excess of 40 hours per week (80 hours per pay period).
[7] *See* Defs.' Ex. 6; Pl.'s Ex. 13.
[8] The "Total Amount Due" represents the amount Plaintiff was entitled for regular wages at $20 per hour at 40 hours per week (80 hours per pay period) and overtime wages at $30 per hour for any hours worked in excess of 40 hours per week (80 hours per pay period).
[9] Defendants paid Plaintiff $20 per hour regardless of the number of hours she worked in excess of forty hours per week. Therefore, the "Total Unpaid Overtime" represents the amount owed for overtime less the $20 per hour Defendants had paid Plaintiff for those hours.

6

| | | | | | |
|---|---|---|---|---|---|
| 1/16/2016 to 1/31/2016 | 86 | 6 | $1,720 | $1,780 | $60 |
| 2/1/16 to 2/15/16 | 119[10] | 39 | $2,540 | $2,770 | $230 |
| 2/16/16 to 2/29/16 | 107.5 | 27.5 | $2,150 | $2,425 | $275 |
| 3/1/16 to 3/15/16 | 107 | 27 | $2,140 | $2,410 | $270 |
| 3/16/16 to 3/31/16 | 130 | 50 | $2,600 | $3,100 | $500 |
| 4/1/16 to 4/15/16 | 115.5 | 35.5 | $2,306 | $2,665 | $359 |
| 4/16/16 to 4/30/16 | 124 | 44 | $2,480 | $2,920 | $440 |
| 5/1/16 to 5/15/16 | 122 | 42 | $2,440 | $2,860 | $420 |
| **Totals:** | 1002 hours | 282 hours | $20,196 | $23,100 | **$2,664** |

## II. Conclusions of Law

Based on the findings of fact set forth herein, the Court makes the following conclusions of law:

1. Plaintiff is an "employee" under the FSLA, not an independent contractor.

2. Defendants Starwest, Khalil and Algaily are Plaintiff's "employers" under the FSLA;

3. Defendants together with the Prince are Plaintiff's joint employers.

4. As Plaintiff's joint employers under Section 3(d) of the FLSA, 29 U.S.C. § 203(d), Defendants Starwest, Ehab Khalil and Tariq Algaily are jointly and severally liable for their violations of the FLSA.

5. As an employee, Plaintiff was entitled to receive regular and overtime pay, as required under the FLSA. *See* 29 U.S.C. § 216(b) (An "employee" for the purposes of the FLSA is entitled to unpaid wages; and any employer who violates the provisions of FLSA "shall be liable

---

[10] During trial, Plaintiff testified that for the February 1, 2016 timesheet entry, she submitted for payment 8 hours of holiday pay even though Defendants did not pay for holiday hours. Based on Plaintiff's testimony, the Court subtracted 8 hours from the total hours worked during the pay period February 1, 2016 to February 15, 2016.

7

to the employee or employees affected in the amount of the unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.")

6. Defendants violated the FLSA when it failed to pay the Plaintiff both regular and overtime wages as set forth in Finding of Facts, Nos. 25 and 26.

7. For the period February 1, 2017 to March 31, 2017, Plaintiff was entitled to receive from the Defendants $6,400 in unpaid regular wages.

8. For the periods January 1, 2016 through May 15, 2016 and February 1, 2017 through March 31, 2017, Plaintiff was entitled to receive from the Defendants overtime wages in the amount of $6,354.

9. Plaintiff is entitled to liquidated damages in the amount of $12,754, or twice the amount of unpaid wages.

### III. CONCLUSION

For the foregoing reasons, the Court issues its verdict in favor of the Plaintiff and against the Defendants and in favor of the Plaintiff; and it is hereby

ORDERED that judgment be, and the same hereby is, entered in favor of the Plaintiff and against the Defendants jointly and severally in the amount of $25,508, representing $6,400 in back pay for regular wages, $6,354 in back pay for overtime wages, and an equal amount of each in liquidated damages.

The Clerk is directed to enter judgment pursuant to Fed. R. Civ. P. 58 in favor of Plaintiff and against all Defendants jointly and severally.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

July 18, 2018
Alexandria, Virginia